UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL J. ALEXANDER,

       Plaintiff,

                                                       Case No. 1:10-cv-192

v.                                                    Hon. Hugh W. Brenneman, Jr.

THE MICHIGAN ADJUTANT
GENERAL, *et al.*,

       Defendants.

_____/

**OPINION**

This matter is now before the court on plaintiff's motion for summary judgment (docket no. 46), defendants' cross motion for summary judgment (docket no. 48), and plaintiff's motion for leave of court to amend complaint (docket no. 52).

    **I.**    **Background**

    **A.**    **Plaintiff's previous lawsuit in the Court of Claims**

This is plaintiff's second federal court action filed to contest the termination of his employment as a National Guard technician (NGT). Prior to 1995, plaintiff was a member of the Michigan Air National Guard (sometimes referred to as the "Guard") and employed as an NGT in Battle Creek, Michigan. In September 1995, plaintiff was terminated from his position as an NGT. Approximately six years later, plaintiff filed a lawsuit in the United States Court of Federal Claims to contest the decision to terminate his employment as an NGT. *See Alexander v. United States*, 52 Fed. Cl. 710 (No. 01-540C) (Fed. Cl. 2002). In this lawsuit, plaintiff sought an award of severance pay, reinstatement and back pay arising from the termination of his employment. Plaintiff alleged violations of the Due Process Clause of the Fifth Amendment; the Due Process and Equal Protection

Clauses of the Fourteenth Amendment as applicable to the Federal Government; and violations of the National Guard Technicians Act of 1968, 32 U.S.C. § 709 (the "NGTA"). *Alexander*, 52 Fed. Cl. at 712.  In addition, plaintiff alleged that neither his employment termination nor his resignation from the Guard was voluntary, and he sought reinstatement and/or back pay under the Back Pay Act, 5 U.S.C. § 5596. *Id.*  Alternatively, plaintiff sought severance pay under 5 U.S.C. § 5595(b). *Id.*

The court granted the defendant's motion to dismiss plaintiff's claims for reinstatement and back pay for lack of jurisdiction. *See Alexander*, 52 Fed. Cl. 710.  However, the court denied the defendant's motion to dismiss plaintiff's claim for severance pay, noting that "National Guard technicians appointed to the Civil Service by the adjutants general explicitly are entitled by statute to make claims for severance pay." *Alexander*, 52 Fed. Cl. at 711-17 (citing 5 U.S.C. § 2105(a)(1)(F), (3)).  Plaintiff appealed the dismissal of his claims for reinstatement and back pay, but the appeal was dismissed for lack of a final judgment. *See Alexander v. United States*, 50 Fed. Appx. 435 (Fed. Cir. 2002).

On August 31, 2004, the United States Court of Claims entered a final judgment pursuant to Fed. R. Civ. P. 58, stating that "plaintiff's claims for reinstatement and compensation under the Back Pay Act, 5 U.S.C. § 5596(2000) are dismissed, without prejudice for lack of subject matter jurisdiction" and awarding him a judgment for severance pay in the amount of $10,280.43. *Alexander v. United States*, No. 01-540C (Aug. 31, 2004) (docket no. 1-9).

This judgment was affirmed in *Alexander v. United States*, 143 Fed. Appx. 340 (Fed. Cir. 2005), *cert. denied.* 547 U.S. 1005 (2006).  The Federal Circuit's decision is instructive, because it summarized the events which led to the present dispute:

> Mr. Alexander was employed as an excepted service technician with the Michigan Air National Guard ("Guard") as an instructor pilot.  Based upon

allegations that he had abused alcohol, the Guard suspended his security clearance. In July of 1995, Mr. Alexander's commander ordered him to undergo a one month alcohol rehabilitation program at Wright-Patterson Air Force Base in Ohio. Mr. Alexander did not undergo treatment in the program, however.

On August 25, 1995, Mr. Alexander was notified that he would be terminated from his Guard position for failing to meet the required qualifications, namely, "failure to maintain [ ] flying status and required security clearance." According to the SF-50 terminating Mr. Alexander, the Guard considered him to have resigned voluntarily.

On October 28, 1995, the Guard informed Mr. Alexander that if he did not receive alcohol rehabilitation treatment, he would be dishonorably discharged from his commission as an officer in the Guard, unless he voluntarily resigned first. Mr. Alexander submitted a resignation letter dated November 8, 1995. He was released from his position effective January 30, 1996.

At the request of Mr. Alexander's congressional representative, the Inspector General of the Department of Defense ("IG") investigated Mr. Alexander's case. The IG concluded that Mr. Alexander's commander had exceeded his authority by ordering him to undergo alcohol rehabilitation at Wright-Patterson AFB. The IG also concluded that the commander did not have authority to suspend Mr. Alexander's security clearance. Thus, the IG concluded that Mr. Alexander still maintained his security clearance and that his termination was not in accordance with pertinent regulations.

Mr. Alexander twice sought reinstatement with the Guard. On his second attempt, he submitted the IG's report. However, the Michigan Adjutant General ("AG"), Major General E. Gordon Stump, took the position that he was not bound by the IG's report, and that the managerial errors noted by the IG did not show Mr. Alexander's fitness for a position with the Guard.

*Alexander*, 143 Fed. Appx. at 341.

### B. Plaintiff's present federal lawsuit

The present lawsuit is based upon the same operative facts as discussed in *Alexander*, 143 Fed. Appx. 340. While plaintiff seeks back pay under the Back Pay Act (as in his earlier lawsuit), the present lawsuit involves a different legal theory for obtaining back pay, i.e., plaintiff seeks "corrections to errors in his federal employee records as a National Guard technician" pursuant

3

to the 5 U.S.C. § 552a (the "Privacy Act"). Compl. at ¶ 1.[1] Plaintiff has named three defendants (whom he sometimes collectively refers to as a single "defendant"): The Michigan Adjutant General ("AG") in Lansing, Michigan; the United States Attorney, in Grand Rapids, Michigan; and the Office of the Attorney General in Washington, D.C. *Id.* at ¶ 2.b.

Plaintiff alleged that in 1995, he was a federal employee under the NGTA, 32 U.S.C. § 709. *Id.* at ¶ 6.a. At that time, he was a NGT in Battle Creek, Michigan, as well as a military member of the Guard and an A-10 Instructor Pilot. *Id.* The NGT position required plaintiff to maintain qualifications, including security clearance, flying status, and military membership. *Id.* In July 1995, plaintiff's "commander/supervisor" wrote two memoranda adverse to plaintiff. One memorandum stated that plaintiff had "lost his flying status," while the other memorandum stated that "the commander/supervisor had suspended his security clearance." *Id.* In September 1995, plaintiff was terminated for failure to maintain flying status and security clearance. *Id.* The IG investigated plaintiff's complaints and concluded that plaintiff had not lost his flying status and that his security clearance was unchanged from its Top Secret status. *Id.* at ¶ 6.b. When plaintiff presented this information to the AG in September 2001, the AG refused to correct plaintiff's record and reinstate his technician employment. *Id.*

Plaintiff summarized the allegations of events occurring since that time as follows:

> Mr. Alexander's federal employment record, the Standard Form SF 50B, contains errors concerning his termination from his National Guard technician employment in Battle Creek, Michigan. (*See Atch 2 - SF 50B*). He has appealed the termination and requested corrections numerous times, which would entitle him to

---

[1] While plaintiff alleged that defendants violated his due process and equal protection rights under the 5th and 14th Amendments, he does not seek relief under 42 U.S.C. § 1983 for alleged violations of his constitutional rights. Compl. at ¶ 2.c. *See also*, Joint Status Report (docket no. 18) (plaintiff stated that this lawsuit involved two claims: (1) correction of his administrative record under § 552a; and, (2) an award of back pay pursuant to § 5596 due to his unjustified termination in 1995).

4

>back pay and retirement pay, and remove improper barriers to future federal employment. During an investigation by the Department of Defense Inspector General, the Air Force's final review agencies determined that Mr. Alexander had not lost flying status or security clearance (*See Atch 3 - DoD-IG Report*), and Mr. Alexander forwarded the determinations in September 2001 to the Michigan Adjutant General requesting reinstatement, which was denied. Later, in April 2004 Mr. Alexander forwarded to the Michigan Adjutant General the determination by the Air Force Board for Correction of Military Records that he had not lost flying status or security clearance, and that his military membership was extended to February 2004, but again his request for corrections and reinstatement was denied. In March 2007 Mr. Alexander requested the Michigan Adjutant General to correct his military records by removing the two memorandums from his former commander/supervisor that falsely stated he lost flying status and security clearance. The Adjutant General's review admitted Mr. Alexander did not lose his flying status or security clearance, and the agency removed the commander's errant memorandums and all references to loss of flying status and security clearance. (*see Atch 1 - AG Review*) But the agency did not correct Mr. Alexander's technician record, the SF 50B, which still today falsely states that he lost flying status and security clearance.

Compl. at ¶ 5 (footnote omitted).

Plaintiff seeks three types of relief. First, plaintiff asks that the SF 50B be corrected to reflect that his security clearance and flying status expired on February 29, 2004, and that his military membership be extended from September 28, 1995 to February 29, 2004. *Id.* at ¶ 8.a. Second, plaintiff asks that he be awarded back pay from the date of his unjustified termination (September 28, 1995) through the date when he actually lost his qualifications (February 29, 2004). *Id.* at ¶ 8.b. Third, plaintiff also requests that the court assist him in accomplishing payment into the Federal Employees Retirement System (FERS) "Buy back" program to credit his prior military years into his retirement eligibility, i.e., 4 years of Air Force Academy time and 10 years active service. *Id.* at ¶ 8.c. Plaintiff contends that he lost the opportunity to secure the requirement credit, because it was "instantly stolen when he was wrongly terminated based on false information in his records concerning loss of qualifications." *Id.*

5

### C. Amended Complaint

On January 28, 2011, the court granted plaintiff's unopposed motion to amend the complaint by removing plaintiff's request for back pay. *See* Order (docket no. 37). This amendment did not affect any other portion of the original complaint. Plaintiff has not filed a separate document entitled "amended complaint." For purposes of this opinion, the "amended complaint" consists of the original complaint with the exception of plaintiff's request for assistance in paying FERS to buy back credit for his previous military service as set forth in ¶ 8.c.

### II. Motions for summary judgment (docket nos. 46 and 48)

### A. Legal Standard

The parties have filed cross motions for summary judgment. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by":

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of

> production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

      **B.**    **The Privacy Act claim**

      **1.**    **The Privacy Act**

Under the Privacy Act, at § 552a(g)(1), an individual may bring a civil action against certain federal agencies in a federal district court. *See* 5 U.S.C. § 552a(a)(1), (a)(2) and (g)(1). A principal function of the Privacy Act is to require agencies to keep accurate "systems of records." *Doe v. F.B.I.*, 936 F.2d 1346, 1350 (6th Cir. 1991) (citing § 552a(a)(5), which provides that a "system of records" is "a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual"). Under the Privacy Act, an agency must maintain all records used by it in making determinations about individuals "with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the

individual in the determination." 5 U.S.C. § 552a(e)(5); *Doe*, 936 F.2d at 1350.  In furtherance of this goal, the Privacy Act grants individuals the right to obtain access to agency records pertaining to them, and to request amendment of any records they believe to be inaccurate, irrelevant, untimely, or incomplete.  5 U.S.C. § 552a(d)(1), (d)(2); *Doe*, 936 F.2d at 1350.  Where an agency denies such an amendment request, the Privacy Act grants the individual seeking amendment the right to obtain agency review of the denial.  5 U.S.C. § 552a(d)(3).

The Privacy Act's civil remedies provision, § 552a(g), "provides an enforcement mechanism for individuals whose rights to accurate record-keeping under the Act allegedly have been violated."  *Doe*, 936 F.2d at 1350.  "For suits brought under subsection (g)(1)(A) [§ 552a(g)(1)(A)], the Act authorizes the district court to undertake *de novo* review of the agency's amendment decision and to order the agency to amend the challenged records where appropriate." *Id.*  The Privacy Act authorizes the court to order an amendment of agency records:

> In any suit brought under the provisions of subsection (g)(1)(A) of this section, the court may order the agency to amend the individual's record in accordance with his request or in such other way as the court may direct.  In such a case the court shall determine the matter de novo.

5 U.S.C. § 552a(g)(2)(A).   Individuals may also bring actions under a separate subsection,  § 552a(g)(1)(C), which provides a monetary damages remedy if the agency's decision was intentional or willful and the individual can demonstrate actual damages resulting from the violation.  *Doe*, 936 F.2d at 1350-51.

For purposes of § 552a, an "agency" includes a "military department." *See* 5 U.S.C. § 552a(a)(1); 5 U.S.C. § 552(f).[2]  *See In re Sealed Case*, 551 F.3d 1047, 1049, 1051 (D.C. Cir.

---

[2] The Privacy Act, 5 U.S.C. § 552a, adopts the definition of an agency as set forth in the Freedom of Information Act, 5 U.S.C. § 552.  An apparent typographical error appears in § 552a(a)(1), which refers to the definition of agency at § 552(e).  However, the court notes that the definition of an agency actually

2009) (a military department is an agency under the Privacy Act, which adopts the Freedom of Information Act's definition of an agency); *Schmitt v. City of Detroit*, 395 F.3d 327, 329 (6th Cir. 2005) (the Privacy Act defines the term "agency" with reference to the Freedom of Information Act, and "includes an executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President)").

The statute does not set forth the burden which a claimant must meet to amend allegedly erroneous records.

> Section (d) does not itself state any standard of proof that an agency must use in deciding whether to grant a request to amend. Section (e), however, states that an agency must "maintain all records which are used by the agency in making any determination about an individual with such accuracy . . . as is reasonably necessary to assure fairness to the individual in the determination." *Id.* § 552a(e)(5). In the context of a request to amend an allegedly inaccurate record, this standard obviously requires that there be a sufficient likelihood that the contents of the record are accurate enough so that denying the amendment request is "fair" to the individual involved.
>
> In many cases, perhaps most, fairness to the individual will require that the disputed material be more likely accurate than not. But fairness may not always demand proof of accuracy by a preponderance of the evidence. In some instances, a lesser burden - like substantial evidence - might suffice. The crucial point, however, is before an agency may deny an amendment request, it must determine that the material in its records is sufficiently likely to be accurate that keeping the material in the record is fair to the individual. If the agency cannot determine that keeping the information in the file is fair, then it must grant the amendment request, either by correcting the material or by deleting it from the record. Otherwise, the agency fails to fulfill its statutory duty to "maintain all records . . . with such accuracy . . . as is reasonably necessary to assure fairness to the individual."

*Doe*, 821 F.2d at 702-03 (footnotes omitted). The statute, however, does not require "perfect" records. *Williams v. Department of Veterans Affairs*, 510 F. Supp. 2d 912, 923 (M.D. Fla. 2007).

---

appears in § 552(f).

In summary, "[i]f the court determines that the agency has done what is reasonable in assuring the accuracy of the information, no more is required." *Edison v. Department of the Army*, 672 F.2d 840, 843 (11th Cir. 1982).

### 2. Plaintiff's proposed correction of the SF 50B

In his Privacy Act claim, Plaintiff seeks to have this court direct defendants to make three changes to the SF 50B (Notice of Personnel Action) issued on September 8, 1995. *See* SF50B (docket no. 49-2). First, plaintiff wants the court to direct defendants to change "Block 4," the "effective date" of his termination, from "09-28-95" to "02-09-04." Compl. at ¶ 8.a.(1).

Second, plaintiff wants the court to amend the "remarks" in "Block 46." *Id.* at ¶ 8.a.(2). The "remarks" section (which is actually Block 45) currently includes plaintiff's forwarding address (not pertinent to this action) with the following remarks:

> EMPLOYEE INVOLUNTARILY SEPARATED AFTER RECEIVING WRITTEN NOTICE OF DECISION TO SEPARATE HIM IN ACCORDANCE WITH THE PROVISIONS OF 32 USC 709 AND TECHNICIAN PERSONNEL REGULATION (TPR) 715 WHICH PRECLUDES THE CONTINUED EMPLOYMENT OF ANY TECHNICIAN WHO FAILS TO MAINTAIN THEIR FLYING STATUS AND REQUIRED SECURITY CLEARANCE FOR THE POSITION OCCUPIED. THE NATIONAL GUARD BUREAU CONSIDERES [SIC] THIS A VOLUNTARY ACTION AND THIS RENDERS THE INDIVIDUAL INELIGIBLE FOR SEVERANCE PAY OR A DISCONTINUED SERVICE ANNUITY.
>
> LUMP SUM TO BE COMPUTED AND PAID BY PAYROLL IF DUE.
>
> NONCOMPETITIVE APPOINTMENT ELIGIBILITY AUTHORIZED IN ACCORDANCE WITH PUBLIC LAW 99-586.
>
> REQUEST FOR PRELIMINARY APPOINTMENT DATA (SF75) WILL BE COMPLETED AND FORWARDED UPON REQUEST.

SF 50B.

Plaintiff seeks to amend these remarks as follows:

>Add "29 Feb 2004" for the expiration date of flying status and security clearance. Add the new justification, military membership, expiration date 29 Feb 2004. Remove the statement concerning ineligibility for severance pay.

Compl. at ¶ 8.a.(2).

Third, plaintiff seeks to change "Block 49" (the "approval date") of the SF 50B from "09-28-95" to "02-29-04." *Id.* at ¶ 8.a.(b).

### 3. Whether plaintiff's Privacy Act claims are justiciable

Defendants contend that plaintiff's claim is not justiciable. The Sixth Circuit explained the doctrine of justiciability in *School District of City of Pontiac v. Secretary of the United States Department of Education*, 584 F.3d 253 (6th Cir. 2009):

>One doctrine used by courts to protect their institutional role is justiciability. In *Baker v. Carr*, the Supreme Court defined justiciability as the "[a]ppropriateness of the subject matter for judicial consideration." 369 U.S. 186, 198, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). The concept is distinct from jurisdiction, which calls into question whether the cause of action is a case or controversy under Article III or is otherwise "described by any jurisdictional statute." *Id.* With justiciability, "consideration of the cause is not wholly and immediately foreclosed; rather, the Court's inquiry necessarily proceeds to the point of deciding whether the duty asserted can be judicially identified and its breach judicially determined, and whether protection for the right asserted can be judicially molded." *Id.*

*School District of City of Pontiac*, 584 F.3d at 297-98. Application of the doctrine of justiciability varies from case to case. As the Supreme Court observed in *Flast v. Cohen*, 392 U.S. 83, 97 (1968), "[t]he 'many subtle pressures' which cause policy considerations to blend into the constitutional limitations of Article III make the justiciability doctrine one of uncertain and shifting contours" (footnote omitted).

Courts have declined to address NGT employment disputes on the ground of non-justiciability. For example, in *Fisher v. Peters*, 249 F.3d 433, 437-444 (6th Cir. 2001), the court held that a NGT's discrimination claim brought pursuant to Title VII of the Civil Rights Act of 1964

11

was non-justiciable in the federal courts. Because the position of a NGT was "irreducibly military in nature," the aggrieved plaintiff was required to "pursue military channels for relief." *Fisher*, 249 F.3d at 443. *See generally*, Major Michael J. Davidson and Major Steve Walters, *Neither Man nor Beast: The National Guard Technician, Modern Day Military Minotaur*, Army Lawyer (Dept. of Army Pamphlet 27-50-277) (Dec. 1995) (discussing justiciability as it applies in the context of NGT employment litigation). However, the doctrine of justiciability does not preclude the court from addressing plaintiff's Privacy Act claim in this case. The Privacy Act specifically applies to military departments and "enables individuals to correct errors in their files." *In re Sealed Case*, 552 F.3d at 1048 (citing 5 U.S.C. § 552(f)(1) and 5 U.S.C. § 552a(a)(1)). Although the National Guard has dual federal-state status, and National Guard units are subject to a level of state control when not on active federal duty, "the Privacy Act's definition of agency includes federally recognized National Guard units *at all times*." *In re Sealed Case*, 552 F.3d at 1049-53 (emphasis added). Prior to the termination of his employment in 1995, plaintiff was employed by a federal agency subject to the Privacy Act. Accordingly, plaintiff can seek relief under that Act.

    **4.**    **Statute of Limitations**

Nevertheless, the court agrees with defendants that plaintiff's Privacy Act claim is untimely. An action to enforce any liability under the Privacy Act may be brought within two years from the date on which the individual's cause of action arises "except that where an agency has materially and willfully misrepresented any information required under this section to be disclosed to an individual and the information so misrepresented is material to establishment of the liability of the agency to the individual under this section, the action may be brought at any time within two

years after discovery by the individual of the misrepresentation." 5 U.S.C. § 552a(g)(5). *See Lockett v. Potter*, 259 Fed. Appx. 784, 786-87 (6th Cir. 2008).

"Under the Privacy Act, a cause of action arises when 1) an error is made in maintaining plaintiff's records, 2) plaintiff was wronged by such error, and 3) plaintiff either knew or had reason to know of the error." *Mangino v. Department of Army*, 818 F. Supp. 1432, 1437 (D. Kan. 1993), citing *Bergman v. United States*, 751 F.2d 314, 316 (10th Cir.1984). *See Lockett*, 259 Fed. Appx. at 786-87 ("the statute of limitations for a Privacy Act claim begins to run when the plaintiff knows or has reason to know of the alleged violation") (citing cases from the 3d, 4th, 7th, 9th, 10th and D.C. Circuits).

Plaintiff filed the present action on February 25, 2010. The record reflects that plaintiff knew or had reason to know of the alleged Privacy Act violation when he was terminated on September 29, 1995, approximately 15 years prior to filing this action. *See* Memorandum to Michael J. Alexander (Aug. 25, 1995) (advising plaintiff the failure to maintain his "flying status and required security clearance" made him no longer eligible to retain his technician position, and notifying plaintiff that his termination with the agency was "effective 29 September 1995") (docket no. 49-5). Under these facts, the two-year limitations period under § 552a(g)(5) expired on or before September 29, 1997.

Giving plaintiff every benefit of the doubt, the court notes that there are three other dates that plaintiff could have claimed to have first "known" about the alleged errors: September 2001 (when plaintiff allegedly submitted the IG's investigation to the AG); September 25, 2001

13

(when plaintiff filed the first action in the United States Court of Federal Claims)[3]; and April 2004 (when plaintiff allegedly forwarded to the Michigan Adjutant General the determination by the Air Force Board for Correction of Military Records that he had not lost flying status or security clearance and that his military membership was extended to February 2004). However, plaintiff's complaint would have been untimely under any these scenarios (the latest of which required a filing date of April 2006). Accordingly, plaintiff's Privacy Act claim is barred by the statute of limitations and defendants are entitled to summary judgment on this claim. [4]

### C. The Back Pay Act

Plaintiff's claim for back pay under the Back Pay Act, 5 U.S.C. § 5596, arose from the anticipated corrections to his employment record which he sought under the Privacy Act. Because plaintiff's Privacy Act claim is barred, his claim under the Back Pay Act cannot succeed. Furthermore, the Federal Circuit previously ruled that plaintiff could not bring a claim under the Back Pay Act, stating in pertinent part:

> "[T]he role of the national guard does not fit neatly within the scope of either state or national concerns; instead, the national guard is somewhat of a hybrid. Within each state, the national guard is a state agency, under state authority and control. At the same time, the activity, make-up, and function of the national guard are provided for, to a large extent, by federal law." *Singleton v. MSPB*, 244 F.3d 1331, 1333 (Fed. Cir. 2001). The NGTA provides for state adjutants general in each state and territory, who, among other things, may employ technicians. 32 U.S.C. §§ 314, 709(d). National Guard technicians are deemed to be federal employees for purposes of providing them with the same fringe and retirement benefits that are provided to other federal employees. *See Singleton*, 244 F.3d at 1334.

---

[3] The court takes judicial notice that plaintiff filed the first lawsuit in the United States Court of Federal Claims, *Alexander v. United States*, on September 25, 2001.

[4] Plaintiff also alleged that he requested the AG to correct his records in March 2007. By this time, plaintiff had been aware of the alleged errors for a number of years. Nevertheless, even if plaintiff first became aware of the alleged errors in March 2007, his complaint would have been untimely.

> The NGTA makes clear that the state adjutants general have exclusive jurisdiction over appeals by technicians who have been separated from civilian employment for the following reasons: (1) loss of membership in the National Guard; (2) failing to meet military security standards; (3) for cause; or (4) due to "a reduction in force, removal, or an adverse action involving discharge from technician employment, suspension, furlough without pay, or reduction in rank or compensation." 32 U.S.C. § 709(f)(1)-(3). In these cases, "a right of appeal which may exist . . . shall not extend beyond the adjutant general of the jurisdiction concerned." *Id.* § 709(f)(4).
>
> We agree with the Court of Federal Claims that Mr. Alexander's claims for reinstatement and back pay are not within that court's jurisdiction, because exclusive jurisdiction over those claims lies with the Michigan adjutant general. . .

*Alexander*, 143 Fed. Appx. at 342. Accordingly, defendants are entitled to summary judgment on this claim.

### III. Plaintiff's second motion to amend (docket no. 52)

Plaintiff has filed a motion to amend his amended complaint to incorporate a claim under 5 U.S.C. §§ 701-706 of the Administrative Procedures Act (APA). Fed. R. Civ. P. 15(a)(2) provides that absent written consent from the opposing party, a party may amend its pleading only with the court's leave which "[t]he court should freely give when justice so requires." In making this determination, the court may deny the motion as futile if it would not survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Campbell v. BNSF Railway Company*, 600 F.3d 667, 677 (6th Cir. 2010) ("[t]o overcome a Rule 12(b)(6) dismissal, the complaint's factual allegations must be enough to raise a right to relief above the speculative level, and state a claim to relief that is plausible on its face") (internal quotation marks and brackets omitted).

Here, plaintiff's proposed amendment is futile because he cannot state a claim for relief under the APA. As the Sixth Circuit explained in *Leistiko v. Stone*, 134 F. 3d 817 (6th Cir. 1998), such a claim is precluded by the provisions of the Civil Service Reform Act (CSRA):

15

> It is true that the Administrative Procedure Act provides generally for judicial review of final agency action for which there is no other adequate remedy in a court. 5 U.S.C. § 704. The Act is inapplicable, however, to the extent that other statutes preclude judicial review. 5 U.S.C. § 701(a)(1). As we have seen, the Civil Service Reform Act [5 U.S.C. § 1101 *et seq.*], as construed by the Supreme Court in [*United States v. Fausto*, 484 U.S. 439 (1988)] and the Federal Circuit in [*Booth v United States*, 990 F.2d 617 (Fed. Cir. 1993)], precludes judicial review of adverse personnel actions involving technicians employed under the National Guard Technicians Act.

*Leistiko*, 134 F.3d at 820. *See generally, Grosdidier v. Chairman, Broadcasting Board of Governors*, 560 F.3d 495, 497 (D.C. Cir. 2009) ("The CSRA protects covered federal employees against a broad range of personnel practices, and it supplies a variety of causes of action and remedies to employees when their rights under the statute are violated. As our Court has emphasized, the CSRA is comprehensive and exclusive. Federal employees may not circumvent the Act's requirements and limitations by resorting to the catchall APA to challenge agency employment actions"); *Forrey v. Office of Personnel Management*, No. 95-3359, 1995 WL 696901 at *1 (6th Cir. Nov. 20, 1995) ("Congress did not intend that judicial review would be available under the APA or the Mandamus Act after the enactment of the Civil Service Reform Act") (citing *Ryon v. O'Neill*, 894 F.2d 199, 203 (6th Cir. 1990)). Accordingly, plaintiff's motion to amend again his amended complaint will be denied.

### IV. Conclusion

For reasons stated above, plaintiff's motion for summary judgment (docket no. 46) will be **DENIED**, defendants' cross motion for summary judgment (docket no. 48) will be

**GRANTED**, plaintiff's motion for leave of court to amend complaint (docket no. 52) will be **DENIED**, and this case will be dismissed.    An order consistent with this opinion shall be issued forthwith.


Dated:  March 16, 2012                             /s/ Hugh W. Brenneman, Jr.
                                                                    HUGH W. BRENNEMAN, JR.
                                                                    United States Magistrate Judge